**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-01005-MEH

MICHAEL AUSTIN,
ANDY GOMEZ, and
GEORGE LAHR,

     Plaintiffs,

v.

BADGER DAYLIGHTING CORP.,
a Nevada corporation in good standing,

     Defendant.

---

**AMENDED COMPLAINT AND JURY DEMAND**

---

     Plaintiffs, Michael Austin, Andy Gomez, and George Lahr (collectively "Plaintiffs"), through undersigned counsel, amend their complaint against Badger Daylighting Corp. ("Defendant" or "Badger") and allege as follows:

**INTRODUCTION**

     1.    This is an action for damages to redress Defendant's wrongful termination and constructive discharge of Plaintiffs' employment in violation of public policy. Defendant expressly and indirectly directed Plaintiffs to conceal and withhold material facts from the Occupational Safety and Health Administration ("OSHA"). Defendant retaliated against and ultimately terminated and/or constructively discharged Plaintiffs as a result of their refusal to comply with Defendant's illegal directive.

## PARTIES

2.     Plaintiff Michael Austin ("Austin") is an individual who resides in Parachute, Colorado.

3.     Plaintiff Andy Gomez ("Gomez") is an individual who resides in Rifle, Colorado.

4.     Plaintiff George Lahr ("Lahr") is an individual who resides in Parachute, Colorado.

5.     Defendant Badger Daylighting Corp. is a corporation organized under the laws of the State of Nevada, whose principal place of business is in Pittsboro, Indiana.  Badger Daylighting Corp. was conducting business within the State of Colorado at all times relevant to the allegations in this Amended Complaint.

## JURISDICTION AND VENUE

6.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1332, diversity of citizenship.

7.     Venue is proper because the conduct complained of occurred in Colorado.

## FACTUAL ALLEGATIONS

8.   Defendant provides non-destructive excavating services for contractors and facility owners in the utility and petroleum industries.

9.     Plaintiffs are former employees of Defendant who were employed by Defendant prior to and on March 8, 2013.

10.    At all relevant times herein Austin and Gomez worked as swampers, and Lahr worked as an operator.

11.    In their respective roles, Plaintiffs' duties related to safety included, but were not limited to, understanding and complying with all Defendant's safety rules, discussing and

resolving unsafe actions as they are observed, and complying with all applicable laws and regulations in carrying out their job responsibilities.

12. Starting on March 8, 2013, and for several days thereafter, Plaintiffs were exposed to then-unidentified toxic substances leaking from a Williams Midstream pipeline site where Plaintiffs were assigned to work adjacent to Parachute Creek in Parachute, Colorado.

13. Colorado state officials soon thereafter found that samples from monitoring wells near the pipeline leak showed benzene levels of 5800 to 18000 parts per billion, far above the state health standards of 5 parts per billion.

14. On or about March 18, 2013, multiple media outlets reported that Defendant's employees at the Williams Midstream pipeline site may have been exposed to benzene.

15. Plaintiffs, prior to, during, and after the discovery of the possible exposure to benzene at the Williams Midstream pipeline, and on an ongoing basis, raised concerns to their superiors, including, without limitation, Tim Reiber, Cody Jeter, and Aaron Bruck, about unsafe work conditions and the need for Defendant to provide adequate personal protective equipment ("PPE") to its employees, including protective masks, monitors, and rain gear.

16. Plaintiffs' requests, however, went unaddressed and Defendant continued to assign Plaintiffs and other employees to hazardous work areas without proper or adequate PPE, which resulted in Plaintiffs feeling sick as a result to their exposure to the hazardous materials.

17. Upon being informed of their possible exposure to benzene, Plaintiffs renewed their request for adequate PPE and asked their supervisors for permission to be checked out by Defendant's workers compensation doctors, but their request was initially denied.

18. Instead, Cody Jeter, Defendant's general manager at that time for Defendant's Rifle, Colorado office, retaliated against Plaintiffs for reporting these safety and hazardous

concerns by, among other things, not scheduling them for work and substantially reducing the hours offered to them.

19.     Plaintiffs are blue-collar workers who subsist paycheck to paycheck and rely on steady work to meet their costs of living.  If a paycheck is not received, or even if a paycheck is significantly reduced, Plaintiffs fall behind in their payments and cannot catch up even if they earn their "average" wages the very next paycheck.

20.     During the first week of April 2013, Plaintiffs reported Defendant's lack of proper PPE to OSHA and filed complaints concerning safety and health hazards they and other employees faced as employees of Defendant at numerous work areas, including the release of toxic substances at the Williams Midstream pipeline site.

21.     Several days later, just prior to the OSHA investigators' arrival at Defendant's Rifle, Colorado office to investigate the safety complaints, Cody Jeter called a safety meeting. At that meeting, Jeter informed Defendant's employees, including but not limited to Plaintiffs, that OSHA investigators would be at the location and instructed the employees not to cooperate or speak with the investigators because the OSHA investigators were not Badger's friends and talking to them would cause trouble for Defendant.

22.     Jeter further indicated that Plaintiffs' jobs could be on the line if they cooperated with OSHA investigators.

23.     Plaintiffs understood Jeter's directive to be a request that they attempt to do their best to misrepresent and/or conceal pertinent material information related to safety concerns, especially at the Williams Midstream pipeline site.

24. Plaintiffs refused Jeter's request and participated fully in the OSHA investigation, based upon their belief that it was their duty to communicate with and assist OSHA in its investigation.

25. Following Plaintiffs' participation in the OSHA investigation, their continued reporting of their exposure to toxic chemicals released at the Williams Midstream pipeline site due to inadequate PPE, and their filing of a complaint with OSHA, Defendant and its agents intensified the campaign of retaliation against them.

26. Over the next several months, Defendant drastically reduced work hours offered to Plaintiffs, unfairly reprimanded Plaintiffs for alleged infractions for which other employees were not written up, and continuously ignored Plaintiffs' requests for proper PPE and other work equipment.

27. Plaintiffs attempted to communicate with Defendant's president, as invited per company policy, in an unsuccessful attempt to alleviate their harsh treatment by Defendant.

28. Soon thereafter, on September 6 and 9, 2013, respectively, Lahr and Gomez were terminated by Defendant, less than four months after Plaintiffs initially provided their honest account of the health and safety risks to OSHA and participated in OSHA's subsequent investigation.

29. On October 18, 2013, Austin wrote to his supervisors, Aaron Bruck and Cody Jeter, that he considered himself effectively terminated by Defendant, after many months of not being provided work opportunities by Badger's Rifle office and egregiously denying him the opportunity to work with a Badger franchisee in Durango.

**FIRST CLAIM FOR RELIEF**
**(Wrongful Termination in Violation of Public Policy)**

30. Plaintiffs hereby incorporate by reference all paragraphs of this Amended Complaint as though fully set forth herein.

31. Lahr and Gomez had a work-related duty to discuss and resolve unsafe actions as they are observed and to comply with all of Defendant's safety rules, as well as with all applicable laws and regulations.

32. Defendant was aware of Lahr's and Gomez' duties related to safety, as such duties were expressed in, *inter alia*, Defendant's Health and Safety Handbook.

33. Defendant directly and indirectly ordered Lahr and Gomez to violate the public policy clearly delineated in 18 U.S.C. § 1001, which broadly prohibits parties from concealing information from or making false statements to a federal agency such as OSHA and imposes criminal liability on persons who do so.

34. Lahr and Gomez reasonably believed that it was their legally protected right and responsibility to provide honest information and participate fully in an OSHA investigation into Defendant's safety issues.

35. Defendant had and failed to meet its duty to disclose material facts to OSHA at all times during OSHA's investigation.

36. Defendant knew or should have known that Lahr's and Gomez' compliance with Defendant's directive would violate the specific provisions of 18 U.S.C. § 1001, as well as Defendant's own Health and Safety Handbook.

37. Defendant retaliated against Lahr and Gomez and ultimately terminated their employment in an effort to silence and punish them for their refusal to participate in Defendant's illegal attempt to conceal information and misrepresent material facts to OSHA.

38. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiffs.

39. As a direct and proximate result of Defendant's wrongful termination of Lahr's and Gomez' employment, in violation of public policy, Lahr and Gomez sustained and continue to sustain injuries, including loss of back pay, loss of front pay, loss of benefits, litigation costs, attorney fees, emotional distress, and other general and special damages to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Constructive Discharge in Violation of Public Policy)**

40. Plaintiffs hereby incorporate by reference all paragraphs of this Amended Complaint as though fully set forth herein.

41. Austin had a work-related duty to discuss and resolve unsafe actions as they are observed and to comply with all of Defendant's safety rules, as well as with all applicable laws and regulations.

42. Defendant was aware of Austin's duties related to safety, as it was expressed, *inter alia*, in Defendant's Health and Safety Handbook.

43. Defendant directly and indirectly ordered Austin to violate the public policy clearly delineated in 18 U.S.C. § 1001, which broadly prohibits parties from concealing information from or making false statements to a federal agency and imposes criminal liability on persons who do so.

44. Austin reasonably believed that it was his legally protected right and responsibility to provide honest information and participate fully in an OSHA investigation into Defendant's safety issues.

45. Defendant had and failed to meet its duty to disclose material facts to OSHA at all times during OSHA's investigation.

46. Defendant knew or should have known that Austin's compliance with Defendant's directive would violate the specific provisions of 18 U.S.C. § 1001, as well as Defendant's own Health and Safety Handbook.

47. Defendant retaliated against Austin and ultimately compelled him to quit his employment as a result of the substantial reduction in his work hours and compensation and denying him work with a Badger franchisee, in an effort to silence and punish him for his refusal to participate in Defendant's illegal attempt to conceal information and misrepresent material facts to OSHA.

48. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiffs.

49. As a direct and proximate result of Defendant's constructive discharge of Austin's employment in violation of public policy, Austin sustained and continues to sustain injuries, including loss of back pay, loss of front pay, loss of benefits, litigation costs, attorney fees, emotional distress, and other general and special damages to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;

(b) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c) All economic losses on all claims allowed by law;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

  (e)  Attorneys fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

  (f)  Pre and post-judgment interest at the lawful rate; and,

  (g)  Any further relief that this court deems just and proper, and any other relief as allowed by law or in equity.

**PLAINTIFFS REQUEST A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 19th day of June 2015.

        Respectfully submitted,

        *s/Joseph C. Cohen*
        Joseph C. Cohen
        MILLS & COHEN, PLLC
        1901 W. Littleton Blvd., Suite 219
        Littleton, Colorado 80120
        Telephone: (303) 794-2114
        Facsimile: (303) 795-3546
        E-mail: jcc@jccpc.com

        *s/Keith A. Shandalow*
        Keith A. Shandalow
        LAW OFFICES OF KEITH A. SHANDALOW, P.C.
        1221 Pearl Street
        Boulder, Colorado 80302
        Telephone: (303) 443-0168
        Facsimile: (303) 443-6635
        E-mail: keith@shandalow.com

        *s/Temitayo "Tayo" O. Okunade*
        Temitayo "Tayo" O. Okunade
        OKUNADE, LLP
        10200 E. Girard Avenue, Suite C250
        Denver, Colorado  80231
        Telephone: (303) 480-7855
        Facsimile: (303) 416-8800
        E-mail: tayo@okunadellp.com

        *Attorneys for Plaintiffs – Michael Austin,*
        *Andy Gomez, George Lahr*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2015, I electronically filed the foregoing AMENDED COMPLAINT AND JURY DEMAND with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following persons:

Timothy M. Kratz
JACKSON LEWIS P.C.
950 17th Street, Suite 2600
Denver, Colorado 80202
Telephone: (303) 892-0404
Facsimile: (303) 892-5575
E-mail: Tim.Kratz@jacksonlewis.com

*Attorneys for Defendant*
*Badger Daylighting Corp.*

                                                    *s/*