IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01005-MEH

MICHAEL AUSTIN,
ANDY GOMEZ, and
GEORGE LAHR,

      Plaintiffs,

v.

BADGER DAYLIGHTING CORP.,

      Defendant.

## ORDER ON MOTION TO DISMISS

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant's Motion to Dismiss [filed July 9, 2015; docket #22]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court **grants** the Defendant's motion.[1]

## BACKGROUND

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs, who were employees of Defendant, reported a workplace safety and health hazard (exposure to benzene) to the federal Occupational Safety and Health Administration ("OSHA") and

---

[1] Pursuant to 28 U.S.C. § 636(c) and the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges, the parties consented to the jurisdiction of this Court to conduct all proceedings in this civil action. Docket #13.

filed complaints with OSHA. Cody Jeter, a supervisor for the Defendant, told some of Defendant's employees, including the three Plaintiffs here, that OSHA would be doing an investigation at Defendant's Rifle, Colorado office and instructed them "not to cooperate or speak with the investigators," and that their jobs would be on the line if they did cooperate with OSHA. Plaintiffs ignored Jeter's demands and cooperated with OSHA. Approximately five months after the investigation, Plaintiffs Lahr and Gomez were terminated. One month later, Plaintiff Austin resigned but contends that he was constructively discharged. The Plaintiffs allege that Defendant "retaliated against [them] and ultimately terminated their employment in an effort to silence and punish them for their refusal to participate in Defendant's illegal attempt to conceal information and misrepresent material facts to OSHA." Amended Complaint, ¶¶37, 47. They now bring claims under Colorado law for wrongful discharge in violation of public policy.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Evaluation of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely

conclusory. *Id.* at 678–80. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

In *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992), the Colorado Supreme Court recognized an exception to "at will" employment in Colorado, namely "wrongful discharge in violation of public policy." *Id.* at 109. Neither party disagrees with this. Defendant alleges that Plaintiffs' claim should be characterized as asserting a wrongful discharge for participating in the OSHA regulatory and investigatory process. Defendant further contends that OSHA provides a remedy for employees who are terminated by their employer for participating in the OSHA workplace safety process. 29 U.S.C. § 660(c). Finally, Defendant argues that when a public policy wrongful discharge claim depends upon a statute that already provides a wrongful discharge remedy,

the claim is not available. I agree. *See Stout v. Gyrodata, Inc.*, 560 F. App'x 765 (10th Cir. Mar. 27, 2014) (addressing a nearly identical fact scenario under Colorado law involving an OSHA claim).

To avoid the impact of *Stout*, Plaintiffs contend that, in refusing to comply with Jeter's instructions, Plaintiffs were trying to avoid a violation of 18 U.S.C. § 1001, i.e., making a false statement to an agency of the United States. Indeed, if Plaintiffs were to prove that "carrying out [their] superior's orders would have violated the specific provisions of 18 U.S.C. § 1001, and that the reason for [their] termination was [their] refusal to obey his employer's direction," this would state a claim for wrongful discharge in violation of public policy under Colorado law. *Lorenz*, 823 P.2d at 111. Defendant contends that allowing Plaintiffs to use Section 1001 as the public policy underlying their wrongful discharge claim would "open the door to a common law public policy discharge claim in virtually any situation in which a plaintiff contends that he or she was pressured to conceal information or give false information to a government investigator despite the existence of a statutory remedy." Reply, docket #26 at 6. Neither party provided, nor did I find, any controlling authority on the issue of whether a plaintiff may claim Section 1001 as his or her public policy foundation in a situation in which there is another, and perhaps even more apropos, public policy ground that, if used, would bar a plaintiff's claim. Thus, this seems to be an issue of first impression in Colorado.

In analyzing Plaintiffs' claim, I first note that to establish a reasonable fear of a violation of Section 1001, Plaintiffs would have to prove that they had a legal duty to disclose under OSHA. "[C]oncealment [under Section 1001] must occur in the face of a legal duty to disclose." *U.S. v. Mubayyid*, 658 F.3d 35, 70 (1st Cir. 2011). I am not sure how Plaintiffs would accomplish this. Under the OSHA statute, an employer is only obligated to provide one employee to accompany

OSHA personnel during an investigation. 29 U.S.C. § 657(e). Plaintiffs do not allege that any of them were the Defendant's designated representative. The statute also provides that prior to or during an OSHA inspection, "any employees . . . employed in such workplace may notify [OSHA], in writing, of any violation of this chapter." *Id.* § 657(f)(2). I could find no authority to establish that these Plaintiffs would have had a legal duty to speak with OSHA representatives during a routine inspection, such that a potential Section 1001 violation could arise in the face of their refusal.[2] Moreover, although making an actual false statement to OSHA could give rise to a criminal prosecution, I do not read the Amended Complaint as plausibly stating a claim that Jeter instructed the Plaintiffs to lie. In Paragraph 23 of the Amended Complaint, Plaintiffs allege that Jeter was, in their minds, instructing them to misrepresent matters; however, Paragraphs 21 and 22, which reference Jeter's actual statements, can only be plausibly interpreted as demanding Plaintiffs' non-cooperation.[3]

My research leads me to conclude that the more appropriate basis for Plaintiffs' claim, if indeed they are permitted at all to avoid the impact of OSHA's remedy for wrongful discharge, would be a violation of 18 U.S.C. § 371, "conspiracy to obstruct a matter within the jurisdiction of a federal agency." *U.S. v. Manamela*, No. 13-3676, 2014 WL 10249562, at *2 (3d Cir. Aug. 18, 2014). Jeter's alleged instructions to refrain from cooperating with the federal government could

---

[2]*See, e.g., Reich v. Muth*, 34 F.3d 240 (4th Cir. 1994) (when employees refuse to speak with OSHA during an inspection, OSHA must obtain administrative subpoenas).

[3]"21. . . . . Cody Jeter . . . instructed the employees not to cooperate or speak with the investigators because the OSHA investigators were not Badger's friends and talking to them would cause trouble for Defendant.

22. Jeter further indicated that Plaintiffs' jobs could be on the line if they cooperated with OSHA investigators."

5

more plausibly state a "conspiracy to conceal" than a "false statement."[4]  I also believe that such an alleged violation would state a claim under Colorado law as I read the cases from the state courts. *E.g., Lorenz*, 823 P.2d at 111 (noting the public policy favoring "full disclosure and truthfulness in . . . reports to the government.")  Thus, to permit Plaintiffs to proceed with their public policy discharge claim despite OSHA's remedy provision, it would be necessary for Plaintiffs to be granted leave to file a Second Amended Complaint if such amendment were not futile.  As I discuss below, I believe leave to amend is not appropriate here.

Under the facts of this case, Plaintiffs certainly could have invoked OSHA's Section 660(c) and, in fact, did originally file complaints with OSHA pursuant to that provision (although the record is unclear as to the outcome of those complaints).  But, does the existence of this potential remedy bar *any* wrongful discharge suit, even if there is an alternative public policy basis for the claim?  A U.S. district judge in Colorado has previously noted, "Colorado law is clear that a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy." *Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994).  However, the statute "at issue" here is Section 1001, which, unlike the OSHA statute, does not have a wrongful discharge remedy.  So while the Plaintiffs have an available statutory remedy under OSHA, they are choosing to pursue a public policy basis for their wrongful discharge suit that does not contain a remedy.

---

[4]*United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011):
> To convict a defendant of conspiracy under 18 U.S.C. § 371, the government must prove that: (1) there was an agreement to violate the law, (2) the defendant knew the essential objective of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, (4) an overt act was committed in furtherance of the conspiracy, and (5) the coconspirators were interdependent.

Plaintiffs' position has some support in case law from other jurisdictions. In *Walters v. Roll'N Oilfield Indus., Ltd.*, No. 06-1502-TC, 2008 WL 450382, at *6 (D. Or. Feb. 15, 2008), the court found it was not "appropriate to include in the court's inquiry relief under a statute that plaintiff had not invoked." Thus, the *Walters* court focused only on the relief the plaintiff did invoke, although an alternative, available basis for the wrongful discharge claim may have precluded the lawsuit. Likewise, in *Coburn v. Charter Oak Health Ctr., Inc.*, No. HHDCV146049296S, 2015 WL 544535, at *8 (Conn. Super. Ct. Jan. 13, 2015), the court noted that Connecticut courts "have consistently held that a plaintiff may recover under a theory of wrongful discharge, notwithstanding other statutory avenues of recovery, where the basis of the wrongful discharge claim is a public policy for which the plaintiff is without remedy." Finally, in *Gibbs v. Orkin Exterminating Co.*, 74 F. App'x 747, 748 (9th Cir. 2003), the court found that "statutory preemption is improper when two independent legislative schemes (or, in some cases, a legislative scheme and a common law cause of action) target distinct aspects of a defendant's conduct." *Id.* (applying Oregon law).

The problem with relying on these cases is that they are very state-law specific. For example, some states would not find Section 660(c) to bar a public policy wrongful discharge claim because the OSHA statute does not provide a sufficient remedy, including the full panoply of damages. *See Reddy v. Cascade Gen., Inc.*, 206 P.3d 1070, 1077 (Or. App. 2009) ("[U]nder Oregon law, an available statutory remedy is deemed 'adequate' so as to displace a plaintiff's common-law wrongful discharge claim only if the statute provides for such '[l]egal as well as equitable remedies [as] are needed to make the plaintiff whole . . . .'") (citation omitted). In Colorado, it is clear that Section 660(c) bars a public policy wrongful discharge claim without resort to a comparison of the types of remedies provided under the statute.

The resolution of Defendant's motion in the present requires resorting to the elements of a

public policy wrongful discharge claim:

> (1) the employer directed the employee to perform an illegal act as part of the employee's work related duties; (2) the action directed by the employer would violate a statute or clearly expressed public policy; (3) the employee was terminated as a result of refusing to perform the illegal act; and (4) the employer was aware or should have been aware that the employee's refusal was based upon the employee's reasonable belief that the act was illegal.

*Coors Brewing Co. v. Floyd*, 978 P.2d 663, 667 (Colo. 1999). Interestingly, as relevant here, the Colorado Supreme Court altered the test from that stated in *Lorenz*, which had included in the first element the alternative that "the employer . . . prohibited the employee from performing a public duty or exercising an important job-related right or privilege." *See Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 232 P.3d 277, 281 (Colo. App. 2010) (relying on the original elements of a public policy wrongful discharge claim and not the later *Coors Brewing Co.* formulation, and citing *Lorenz*, 823 P.2d at 109). However, later in the opinion, the *Floyd* court specifically reiterated that, "[o]f course, we recognized in *Lorenz* that the public policy exception is cognizable not only for an employer who retaliates against an employee for refusing to engage in illegal conduct but also one who retaliates against an employee for performing an important public obligation or exercising a statutory right or privilege." 978 P.2d at 667 n.2.

Ultimately, I believe it is unnecessary to decide this point of law under the current pleading. The present case rises or falls on element (1): Plaintiffs have not alleged they received a directive to perform an illegal act. Rather, Plaintiffs' Amended Complaint can only be reasonably read as alleging that the employer retaliated against Plaintiffs for performing an important public obligation, i.e., disclosing workplace health and safety violations and cooperating with a governmental investigation, which places the Plaintiffs' claim squarely within an OSHA Section 660(c) retaliation claim. The facts as alleged by Plaintiffs conceivably, but do not plausibly, allege a directive to lie to OSHA; rather, the directive is to neither speak nor cooperate with the investigators at all. I do

not believe Plaintiffs' subjective belief that they were, in fact, being told to lie to federal investigators nudges their allegation beyond the line of speculation. "The complaint must contain sufficient factual allegations 'to raise a right to relief above the speculative level.'" *Pueblo of Jemez v. U.S.*, 790 F.3d 1143, 1171-72 (10th Cir. 2015). Plaintiffs' "understanding" (Amended Complaint, docket #23 at 4, ¶23) that Jeter was actually directing them to misrepresent facts to OSHA investigators amounts to a "conclusory allegation[] without supporting factual averments." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), quoted in *Washington v. Washington*, 605 F. App'x 716, 718 (10th Cir. 2015), which the Tenth Circuit has determined does not result in a plaintiff meeting his pleading burden. I simply cannot draw a "reasonable inference" that Jeter's comments were a directive to lie. *See Barnes v. Harris*, 783 F.3d 1185, 1196 (10th Cir. 2015). Rather, it is evident that Plaintiffs are straining to fit a Section 1001 claim into what should be an OSHA retaliation theory (were it not for the barring effect of Colorado precedent). A court must not strain to find inferences favorable to a plaintiff, nor to accept unwarranted deductions. *E.g., R2 Inv. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2004).

I do not believe it appropriate to grant Plaintiffs leave to amend in order to attempt a public policy claim under 18 U.S.C. § 371. The entire gist of their allegations focuses on the OSHA whistleblowing and investigative cooperation efforts in which the Plaintiffs engaged. The factual averments concerning workplace health and safety are so pervasive that I do not think the Plaintiffs can, in the current circumstance, avoid the effect of Section 660(c)'s remedial provision under Colorado law. It would be futile to have them attempt to creatively plead their case around this elephant in the room.

## CONCLUSION

Accordingly, based upon the foregoing and the entire record herein, the Court **grants**

Defendant's Motion to Dismiss Plaintiffs' Amended Complaint [filed July 9, 2015; docket #22].

The Clerk of the Court is directed to close this case.

Dated at Denver, Colorado, this 28th day of August, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge